1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THOMAS BONDURANT and MICHELLE
BONDURANT, husband and wife,

                              Plaintiff,

        v.

CITY OF BATTLEGROUND and the
BATTLEGROUND POLICE
DEPARTMENT,

                              Defendants.

Case No. 3:15-cv-05719-KLS

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on defendant's motion for summary judgment. Dkt. 40.

Plaintiffs have brought suit alleging violations of their civil rights as well as various state law

claims. The parties have consented to have this matter heard by the undersigned Magistrate

Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure (FRCP) 73; Local Rule MJR 13. For

the reasons set forth below, the Court finds that defendant's motion should be granted.

FACTUAL AND PROCEDURAL HISTORY

Although the parties agree the events at issue in this case occurred on March 17, 2013,

they dispute what exactly happened. On that day, Richard Kelly, an officer with the City of

Battle Ground Police Department, states he was dispatched to 1412 NW 29th Avenue to assist

medical personnel who were "responding to the residence for a subject, Heather Lampart, who

was complaining of possibly being poisoned." Dkt. 42, p. 1. Officer Kelly states police dispatch

advised him that the residence was "flagged" because one of its occupants, Thomas Bondurant, "had

ORDER - 1

been known to impersonate [American Medical Response (AMR)] personnel." *Id.*

Upon arriving at the residence, Officer Kelly states he found both plaintiffs as well as Ms. Lampert outside the residence. *Id.* Officer Kelly states he observed that Mr. Bondurant was wearing a red AMR coat and was carrying a stethoscope and a blood pressure cuff. *Id.* at pp. 1-2. According to Officer Kelly, there also appeared to be an ID badge attached to Mr. Bondurant's coat. *Id.* at p. 2. Officer Kelly states Mr. Bondurant approached him aggressively and refused to move away from him when requested to do so, as Officer Kelly was trying to care for Ms. Lampert. *Id.* Ms. Bondurant claims that at no time did she observe any anger or agitation on the part of Officer Kelly or Mr. Bondurant. Dkt. 61, p. 2.

According to Officer Kelly, at some point Officer J. Runnels arrived and began to gather information from plaintiffs, as Officer Kelly gathered information from Ms. Lampert. Dkt. 42, p. 2. Ms. Bondurant, however, states a different police officer, Officer Cunningham, was the one who interviewed her. Dkt. 61, p. 2. Officer Kelly states that while he was talking to an AMR supervisor who had arrived on the scene along with Clark County Fire and Rescue, once more Mr. Bondurant approached him aggressively, and asked that one of the fire trucks be moved so he could take one of his sons to work. Dkt. 42, pp. 2-3.

Officer Kelly states Officer Runnels came over and took Mr. Bondurant by the arm and began escorting him away, as Mr. Bondurant was not complying with commands to move away. *Id.* at p. 3. According to Officer Kelly, Mr. Bondurant pulled his arm away and stated "don't touch my arm." *Id.* Also according to Officer Kelly, after he told Mr. Bondurant he was creating a disturbance and would be arrested if he did not leave, Mr. Bondurant walked aggressively to his residence while Ms. Bondurant pleaded with him to calm down. *Id.*

Officer Kelly states that as Mr. Bondurant got to the front door of the residence, either he

ORDER - 2

or Ms. Bondurant appeared to get pushed up against the wall near the door, and that he believed an act of domestic violence had occurred. *Id.* Officer Kelly states he entered the residence to further investigate his suspicion. *Id.* at p. 4. Officer Kelly states that although Ms. Bondurant informed him Mr. Bondurant had tripped and fallen while approaching the front door, he decided to arrest Mr. Bondurant for disorderly conduct and took him into custody. *Id.*

Ms. Bondurant states she and Mr. Bondurant were standing by themselves when AMR arrived on the scene. Dkt. 61, p. 3. Ms. Bondurant states she asked Officer Cunningham to ask AMR to move their ambulance because it was blocking the street and they needed to leave, but Officer Cunningham refused. *Id.* Ms. Bondurant states both she and Mr. Bondurant then began walking toward their residence when a Battle Ground police officer grabbed Mr. Bondurant from behind and stated he did not like Mr. Bondurant or his attitude. *Id.* According to Ms. Bondurant, Officer Kelly told the other officer to let Mr. Bondurant go, and told both her and Mr. Bondurant to go back to their residence. *Id.*

Ms. Bondurant states Mr. Bondurant tripped as they were walking up the front steps of their residence, and she grabbed his jacket to stop him from falling. *Id.* She states that after awhile she heard her children screaming, and that Battle Ground police officers came running into their bedroom, grabbed and wrenched her arm, and shoved her up against a bookcase. *Id.* at p. 4. She further states Officer Kelly handcuffed Mr. Bondurant, explaining it was because Mr. Bondurant pushed her. *Id.* Ms. Bondurant states she tried to tell Officer Kelly that Mr. Bondurant did not push her, but Officer Cunningham told her to shut up and called her a liar. *Id.* She states that as Officer Kelly escorted Mr. Bondurant out of the bedroom, Officer Cunningham swung her around and threw her on the bed, and then tried to shut the front door in her face as she was following them out of the house. *Id.* She states she continued to argue with Officer Cunningham

1    as he continued to threaten to arrest her. *Id.* at 5.

2            On September 22, 2015, plaintiffs filed a complaint in Clark County Superior Court

3    against the City of Battle Ground and the Battle Ground Police Department, for violations of

4    their civil rights, unlawful entry, unlawful arrest and detainment, and assault, which defendants

5    removed to this Court. Dkt. 1. Plaintiffs subsequently sought to add certain individually named

6    defendants–including Officers Kelly, Runnels, Michael, and Cunningham–as well as claims of

7    defamation of character, racial discrimination, and malicious arrest. Dkt. 51. But because the

8    statute of limitation had already expired, and because plaintiffs' amendments did not relate back

9

10   to their original complaint, the Court declined to allow them to do so. Dkt. 81. As such, only the

11   originally named defendants and claims remain.

12           In their motion for summary judgment, defendants argue plaintiffs' complaint should be

13   dismissed because:

14

15         • The Battle Ground Police Department cannot be sued as a separate
             entity and should be dismissed as a defendant;

16

17         • Plaintiffs have not established a constitutional violation;

18         • Plaintiffs have not established a municipal policy or custom caused
             any constitutional violation; and

19

20         • Plaintiffs' state law claims should be dismissed because plaintiffs
             failed to file a claim for damages with the City of Battle Ground
21           prior to commencing their lawsuit and the statute of limitations has
             since expired.

22   Dkt. 40. For the reasons set forth below, the Court agrees with defendants that the Battle Ground

23   Police Department cannot be sued as a separate entity, and that plaintiffs have not established the

24   existence of a municipal policy or custom that caused a constitutional violation. Thus, regardless

25   of whether plaintiffs can demonstrate a constitutional violation even when the facts are viewed in

26   the light most favorable to them–a determination the Court finds it unnecessary to make here–

     ORDER - 4

they have not shown defendants are liable on that basis. Further, for the same reasons defendants assert, the Court finds the state law claims should be dismissed as well.

<u>DISCUSSION</u>

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FRCP 56(c). In deciding whether summary judgment should be granted, the Court "must view the evidence in the light most favorable to the nonmoving party," and draw all inferences "in the light most favorable" to that party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). When a summary judgment motion is supported as provided in FRCP 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2).

If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id.* The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv.*, 809 F.2d at 630.

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant

probative evidence tending to support the complaint." *Id.* (quoting *Anderson*, 477 U.S. at 290). "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Building Prods., Inc.*, 818 F.2d at 1468. In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

<u>DISCUSSION</u>

I.   <u>The Battle Ground Police Department Cannot Be Sued</u>

"The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held." *N Grp. LLC v. Hawai'i Cnty. Liquor Comm'n*, 681 F.Supp.2d 1209, 1233 (D. Haw. 2009) (quoting *Avery v. Cnty. of Burke,* 660 F.2d 111, 113-14 (4th Cir.1981) (citing FRCP 17(b))); *see also Shaw v. California Dep't of Alcoholic Beverage Control,* 788 F.2d 600, 604 (9th Cir.1986); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). "In order for a plaintiff to sue a city department, it must 'enjoy a separate legal existence." *Darby*, 939 F.2d at 313 (citation omitted). Thus, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.*

The City of Battle Ground adopted "the classification of noncharter code city operating under the council-manager plan of government as set forth in Chapter 35A.13 RCW, endowed with all the applicable rights, powers, privileges, duties and obligations of a noncharter code city as set forth in RCW Title 35A." BGMC 1.08.010. RCW 35A.13.230 provides:

> The council of any code city organized under the council-manager plan provided in this chapter shall have the powers and authority granted to legislative bodies of cities governed by this title as more particularly described in chapter 35A.11 RCW, except insofar as such power and authority is vested

ORDER - 6

in the city manager.

RCW 35A.11.010 in turn provides that "[e]ach city governed under this optional municipal code, whether charter or noncharter, . . . may sue and be sued in all courts and proceedings."

Although RCW 35A.11.010 "provides that [cities governed thereunder] may be sued, the statute is . . . silent as to whether their departments are subject to suit." *N Group*, 681 F.Supp.2d at 1234. The City of Battle Ground's municipal code is similarly silent. *Id.*; BGMC 1.08.010. Indeed, while the municipal code sets out a number of authorized activities the Battle Ground Police Department may engage in, none of them involve either suing or being sued. *See* BGMC 2.30.010-2.30.040. Accordingly, "[i]n the absence of explicit steps to grant the [Battle Ground Police Department] the capacity to be sued," the Court finds neither the state legislature nor the City of Battle Ground's city council intended for the City of Battle Ground Police Department "to be subject to suit." *N Group* 681 F.Supp.2d at 1234. Because the City of Battle Ground Police Department thus "lacks the capacity to be sued," it should "be dismissed from this action." *Id.*; *see also Darby*, 939 F.2d at 314 (because plaintiff failed to show the city "ever granted its police department the capacity to engage in separate litigation," the district court did not err in dismissing the lawsuit brought against it).

II.   <u>No Municipal Policy or Custom Established</u>

"The essence of 42 U.S.C. § 1983 is to authorize a court to grant relief when a party's federally protected rights have been violated by a state or local official or other person who acted under color of state law." *Nabozny v. NCS Pearson, Inc.*, 270 F.Supp.2d 1201, 1204 (D. Nev. 2003) Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

ORDER - 7

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A municipality is considered to be a "person" within the meaning of Section 1983. *Board of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). A municipality thus may be liable under 42 U.S.C. § 1983.

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

To establish municipal liability under Section 1983, though, plaintiffs must show: (a) they were deprived of a constitutional right; (b) the municipality had a policy; (c) that policy amounts to deliberate indifference to plaintiffs' constitutional rights; and (d) the policy was the moving force behind the constitutional violation. *Oviatt v. Pearce*, 954 F.2d 1470, 1474  (9th Cir. 1992). A municipal policy is "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000) (citation omitted).

A municipality also may be held liable if the plaintiff identifies a municipal "custom", as opposed to an actual "policy", that caused the alleged injury. *Brown*, 520 U.S. at 403. Liability here requires "[a] persistent, widespread practice of city officials or employees, which, although not

ORDER - 8

authorized by officially adapted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Brown*, 219 F.3d at 457; *Mariani v. City of Pittsburgh*, 624 F.Supp. 506, 509 (W.D. Pa. 1986) (the term "custom" denotes a practice which is so widespread, well settled and permanent, that it rises to the level of law).

As just noted, plaintiffs must present evidence that "the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown*, 219 F.3d at 457 (citing *Brown*, 520 U.S. at 407) ("A showing of simple or even heightened negligence will not suffice."). Further, they must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404 (emphasis in the original). In other words, plaintiffs "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*; *see also Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) ("[T]he municipality itself must cause the constitutional deprivation"; "a city may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*.").

To support their claim, therefore, plaintiffs "must develop facts which demonstrate an 'affirmative link' between the misconduct" alleged and "some policy, express or implied, which has been adopted or authorized" by the municipality. *Mariani*, 624 F.Supp. at 509; *see also Wellington v. Daniels*, 717 F.2d 932, 935-36 (4th Cir. 1983) (municipality's acts or omissions are actionable only if they constitute "tacit authorization" of or "deliberate indifference" to constitutional injuries). Plaintiffs have not met their burden here. They have not come forth with facts demonstrating an affirmative link between the events described above and some official policy or widespread custom of the City of Battle Ground. Plaintiffs provide a copy of the City of Battle

ORDER - 9

Ground Police Department's Manual of Policy and Procedure, but nothing in that manual indicates the existence of a policy or custom to have police officers engage in the type of activity alleged or otherwise violate their civil rights. *See* Dkt. 88-1, pp. 27-31.

Rather, plaintiffs argue defendants are liable because the City of Battle Ground Chief of Police ratified the conduct of the individual police officers in this case. Section 1983 municipal liability may be established where the plaintiff proves "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette*, 979 F.2d at 1346-47. "Whether an official has final policymaking authority is a question for the court to decide based on state law." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). "[T]he identification of those officials . . . who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation," as well as "those officials whose decisions represent the official policy of that local governmental actor is . . . a legal question to be resolved by the" Court. *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989).

"Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). However, "[t]he fact that a particular official–even a policymaking official– has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481-82. Rather, "[t]he official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 482-83. "[U]nconstitutional discretionary actions of municipal employees," accordingly, "generally are not chargeable to the municipality." *Gillette*, 979 F.2d at 1347.

ORDER - 10

Where it is alleged that authority to make municipal policy has been delegated by an official who possesses such authority, the question "becomes whether the policymaker merely has delegated discretion to act, or whether it has done more by delegating final policymaking authority." *Christie*, 176 F.3d at 1237. In determining whether the former is the case, "courts consider whether the official's discretionary decision is 'constrained by policies not of that official's making' and whether the official's decision is 'subject to review by the municipality's authorized policymakers.'" *Id.* at 1237-38 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). On the other hand, delegation of final policymaking authority may be found where "a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker," or where "a series of decisions by a subordinate official manifested a 'custom or usage' of which the supervisor must have been aware." *Gillette*, 979 F.2d at 1348 (quoting *Praprotnik*, 485 U.S. at 130).

To establish municipal liability by ratification, furthermore, the plaintiff must prove that the authorized policymaker "approve[d] a subordinate's decision *and the basis for it* before the policymaker will be deemed to have ratified the subordinate's discretionary decision." *Gillette*, 979 F.2d at 1348 (emphasis in the original); *see also Christie*, 176 F.3d at 1239. A policymaker's mere failure "to overrule the unconstitutional [completed or] discretionary acts of subordinates," though, is insufficient. *Christie*, 176 F.3d at 1239; *Gillette*, 979 F.2d at 1348 ("*Pembaur* requires that an official policymaker make a deliberate choice from among various alternatives to follow a particular course of action.").

Plaintiffs argue the City of Battle Ground chief of police ratified the conduct of the City of Battle Ground police officers at issue in this case, in a letter he wrote concerning the findings of an investigation into Ms. Bondurant's complaint about that conduct. Dkt. 87, p. 2 (citing Dkt.

ORDER - 11

49, p. 16). First, the copy of that letter submitted by plaintiffs–which appears to be incomplete with no indication that it actually came from the chief of police–merely describes the incident that occurred in March 2013, and matters related thereto. Dkt. 49, p. 16. Even if the letter did come from the chief of police, there is nothing to indicate approval of the conduct in question or the basis for it, let alone that a deliberate choice was made among various alternatives to follow a particular course of action.

Nor have plaintiffs shown the chief of police has final policymaking authority in regard to police conduct, as opposed to mere discretionary decision-making authority. As noted above, the City of Battle Ground is a noncharter city. Its city council thus has the "power to organize and regulate its internal affairs . . . and to define the functions, powers, and duties of its officers and employees." RCW 35A.11.020. It also "may adopt and enforce ordinances of all kinds relating to and regulating its local or municipal affairs and appropriate to the good government of the city." *Id.* As defendants further point out, under the city's municipal code the city manager is the official who "exercise[s] supervision over the administrative affairs of the city and over all other appointed officers," who–as the executive officer of the city–appoints the chief of police, and who has the authority to adopt "policies and procedures for the effective and efficient use of resources to serve the public." BGMC 2.30.030, 2.82.010(A), 2.82.020(C).

It is thus the city council and the city manager, not the chief of police, that have the final policymaking authority for the City of Battleground. Plaintiffs have not shown such authority has been delegated to the chief of police by the city council through legislative enactment. Further, to the extent plaintiffs are alleging the city manager delegated such authority, at most as defendants also point out, they can show the city manager did not overrule the alleged discretionary decision of the chief of police. This, though, is insufficient to establish municipal liability by ratification.

ORDER - 12

Instead, plaintiffs must show those officials with final policymaking authority made a deliberate choice from among various alternatives to follow a particular course of action. Plaintiffs have not made that showing. As such, the City of Battleground is not liable.

III.     The State Law Claims are Barred

"The decision to retain jurisdiction over state law claims," even when "the federal claims over which" the district court "had original jurisdiction are dismissed," is entirely "within the district court's discretion." *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (supplemental jurisdiction is a doctrine of discretion, not of plaintiffs' right). In addition to the requirement that there be "a sufficiently substantial federal claim," for supplemental jurisdiction to apply there also must be "a common nucleus of operative fact between the state and federal claims." *Gilder*, 936 F.2d at 421. In weighing whether to retain jurisdiction, furthermore, the Court considers "factors such as economy, convenience, fairness, and comity." *Brady*, 51 F.3d at 816. Plaintiffs have asserted state law claims of unlawful entry, arrest, and detainment, as well as assault. Dkt. 1-1, p. 5. Because his federal and state law claims do share a common nucleus of operative fact–and because it is in the interest of both judicial economy and convenience–retaining jurisdiction over plaintiffs' state law claims is appropriate.

       In Washington, the statute of limitations for claims of false imprisonment, false arrest, and assault is two years, while that for an action for trespass is three years. *City of Moses Lake v. United States*, 430 F.Supp.2d 1164, 1170 (E.D. Wash. 2006); *Heckart v. City of Yakima*, 42 Wn. App. 38 (1985); RCW 4.16.080(1); RCW 4.16.100(1). "Filing a claim for damages within the time allowed by law" with a local governmental entity, though, is "a condition precedent to the commencement of any action claiming damages" made against that entity. *Hintz v. Kitsap Cnty.*,

ORDER - 13

92 Wn. App. 10, 13 (1998); RCW 4.96.010(1). "All claims for damages against a local

governmental entity . . . shall be presented to the agent [appointed by the entity to receive claims

for damages against the entity] within the applicable period of limitations within which an action

must be commenced." RCW 4.96.020(2).

"A claim is deemed presented when the claim form is delivered in person or is received by

the agent by regular mail, registered mail, or certified mail, with return receipt requested, to the

agent or other person designated to accept delivery at the agent's office." *Id.* In addition, "[n]o

action subject to the claim filing requirements . . . shall be commenced against any local

governmental entity . . . for damages arising out of tortious conduct until sixty days have elapsed

after the claim has first been presented to and filed with the governing body thereof." RCW

4.96.020(4). "[S]trict compliance with the filing procedures" is required, and failure to comply

results in "dismissal of the suit." *Hintz*, 92 Wn. App. at 14.

The city clerk is the designated agent for claims against the City of Battle Ground. Dkt.

66, pp. 1, 3-4. According to the city clerk, plaintiffs have not filed a tort claim with the city. Dkt.

32. Plaintiffs assert they did file a tort claim form with the city, but as defendants note the only

form they point to is a police complaint form concerning the March 17, 2013 incident. Dkt. 60,

pp. 7, 15-17. Even if that form could be considered a proper tort claim form, it does not contain

all of the information required, such as a statement of the amount of damages claimed. *Id.*; RCW

4.96.020(3)(a)(vi). Nor is it signed by plaintiffs verifying the claim. Dkt. 60, pp. 15-17; RCW

4.96.020(3)(b). In addition, "[f]or claims for damages presented after July 26, 2009," they "must be

presented on the standard tort claim form." RCW 4.96.020(3).

The Court also agrees with defendants that the City of Battle Ground was not required to

make the standard tort claim form available *online*, although it is statutorily required to make that

ORDER - 14

form *available* or "its own claim form in lieu of that form. RCW 4.96.020(3)(c). There is no indication that the city did not make the standard tort claim or its own claim form available to plaintiffs via other means, for example by request to the city clerk during normal business hours. RCW 4.96.020(2). Given that strict compliance with the statutory filing procedures is required, and that plaintiffs have not strictly complied with those requirements, their state court action was not properly filed. In addition, because the statute of limitations on each of their state law claims have all now run, plaintiffs cannot now go back and correct the error. Accordingly, those claims must be dismissed as well.

CONCLUSION

For the reasons discussed above, defendant's motion for summary judgment (Dkt. 40) hereby is GRANTED, and plaintiffs' complaint (Dkt. 1-1) hereby is DISMISSED.

DATED this 28th day of November, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 15